UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHARON FAYE HOLMES,

       Plaintiff,

v.                                 Case No:  2:17-cv-367-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## REPORT AND RECOMMENDATION[1]

       Plaintiff Sharon Faye Holmes seeks judicial review of the denial of her claim for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the Joint Memorandum (Doc. 17)[2] and the applicable law.  For the reasons discussed herein, the Court recommends the decision of the Commissioner be reversed and remanded.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a

## I.    Issues on Appeal[3]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") consideration of the medical opinion evidence; (2) whether the residual functional capacity ("RFC") assessment adequately accounts for Plaintiff's need for a hand-held assistive device;[4] and (3) whether substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

## II.    Summary of the ALJ's Decision

On April 7, 2014, Plaintiff protectively filed applications for DIB and SSI, and on May 2, 2014, Plaintiff completed her applications for DIB and SSI, alleging a disability onset date of January 2, 2014.  Tr. 12, 202-14.  Plaintiff alleged disability due to osteoporosis, a left leg injury and hypertension.  Tr. 68, 78.  The applications were denied initially and upon reconsideration.  Tr. 68-87, 90-111.  Plaintiff requested and received a hearing, which was held before ALJ Susan L. Torres on November 16, 2015.  Tr. 26-67, 141-42.  Plaintiff was represented by counsel at the hearing, during which Plaintiff and a vocational expert ("VE") testified.  Tr. 28, 31-65.

---

hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[3]  Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[4]  The Joint Memorandum phrases the second issue as also challenging whether the RFC assessment properly accounts for Plaintiff's nonexertional limitations, but Plaintiff only advances arguments regarding Plaintiff's need for a hand-held assistive device.  Therefore, any other arguments regarding Plaintiff's nonexertional limitations are deemed as waived.  *See Access Now., Inc.*, 385 F.3d at 1330.

On February 29, 2016, the ALJ issued a decision finding Plaintiff was not disabled from January 2, 2014 through the date of the decision.  Tr. 12-20.  At step one, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014 and had not engaged in substantial gainful activity since January 2, 2014, the alleged onset date.  Tr. 14.  At step two, the ALJ determined that Plaintiff had severe impairments of "history of left tibia fracture" and hypertension.  *Id.*  At step three, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 15.  The ALJ then determined Plaintiff has the RFC:

> to perform light work[5] as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds.  The claimant can occasionally balance, stoop, kneel, crouch or crawl.  She must avoid concentrated exposure to extreme cold, vibration and hazards such as heights and moving machinery.

Tr. 16.  At step four, the ALJ found Plaintiff can perform her past relevant work as a sander/grinder and as an inspector as they are normally performed.  Tr. 19-20.  The

---

[5] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

ALJ noted such work "does not require the performance of work-related activities precluded by the claimant's [RFC]." Tr. 19. She therefore concluded Plaintiff was not disabled from January 2, 2014 through the date of the decision. Tr. 20.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1-3. Accordingly, the ALJ's February 29, 2016 decision is the final decision of the Commissioner. Plaintiff filed a Complaint in this Court on June 29, 2017. Doc. 1. The matter is now ripe for review.

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[6] Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as

---

[6] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.,* 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective Mar. 27, 2017), 416.920a, 416.920c, 416.927 (effective Mar. 27, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. §§ 404.1527, 416.927 ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a.   Medical opinion evidence

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006). "Medical opinions are statements from acceptable

medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004). Further, the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are reserved exclusively to

the Commissioner.  20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Here, Plaintiff argues the ALJ improperly weighed the opinion of non-examining state agency medical consultant Donald Morford, M.D.  Doc. 17 at 8-9. Plaintiff also argues the ALJ erred in failing to specify the weight assigned to the medical opinions of Plaintiff's treating physician, Bruce Miller, M.D., and non-treating physician, Gregory Leach, M.D, as indicated on the Florida Department of Highway Safety and Motor Vehicles disabled person parking permit applications ("DMV forms") they completed for Plaintiff.  Id. at 7.  The Court recommends the ALJ properly considered the medical opinion of Dr. Morford, and although the ALJ erred in failing to explain the weight given to the opinions of Drs. Miller and Leach in the DMV forms, that error was harmless, as discussed below.   Because the Court recommends the case be reversed and remanded on other grounds, however, the Court also recommends the ALJ be directed to correct the error.

### i.  Dr. Morford

Plaintiff argues the ALJ improperly afforded great weight to the opinion of Dr. Morford.  Doc. 17 at 8.  Plaintiff emphasizes Dr. Morford's opinion that Plaintiff can perform light work is conditional upon Plaintiff continuing to receive medical treatment.  Id.  Thus, Plaintiff asserts her inability to seek medical treatment indicates she is unable to perform light work.  Id. at 8-9.  Plaintiff also argues nurse practitioner Robert Marrero's opinion that Plaintiff may need additional surgery contradicts "the optimistic projection of Dr. Morford" that Plaintiff is capable of

performing light work.  *Id.* at 8.  Accordingly, Plaintiff argues the ALJ's reliance on Dr. Morford's opinion that Plaintiff can perform light work is not supported by substantial evidence.  *Id.* at 8-9.  The Commissioner responds the ALJ properly evaluated the doctors' reports and opinions in assessing Plaintiff's RFC and determining Plaintiff can perform light work.  *Id.* at 9-12.  The Commissioner argues findings of disability and the issue of Plaintiff's RFC are reserved to the ALJ.  *Id.* at 9-10.  The Commissioner asserts Dr. Morford is a highly qualified consultant and an expert in Social Security disability programs, and his opinion is entitled to great weight because it is supported by the medical evidence.  *Id.* at 11.

The Court recommends the ALJ properly considered Dr. Morford's opinion regarding Plaintiff's RFC because although Dr. Morford did not examine Plaintiff, his opinion is supported by substantial evidence in the record.  *See* Tr. 18-20.  Dr. Morford reviewed Plaintiff's disability claim on August 19, 2014.  Tr. 96-100.  Dr. Morford opined Plaintiff can perform work at the light level by occasionally lifting 20 pounds, frequently lifting 10 pounds, standing or walking six hours in an eight-hour workday, and sitting for six hours out of an eight-hour workday, but never climbing ladders, ropes or scaffolds.  Tr. 96-97.  As the ALJ noted, this opinion is supported by the record, including Dr. Kibria's physical examination findings on August 5, 2014 that Plaintiff has well-developed musculature and 5/5 graded motor strength in all four extremities.  *See* Tr. 18, 382-83.

The ALJ's decision to accord Dr. Morford's opinion great weight was not erroneous merely because Dr. Morford opined Plaintiff could perform light work if

she received continued treatment.  Although Dr. Morford's opinion as to Plaintiff's RFC assumed Plaintiff would receive continued treatment, the ALJ's RFC determination did not rely solely on that assumption or Plaintiff's failure to seek further treatment.  Tr. 16-18, 98.  The ALJ's decision to limit Plaintiff to light work was based on Dr. Morford's opinion as well as her own assessment of Plaintiff's objective medical records, including imaging of Plaintiff's knee after surgery, Plaintiff's subjective complaints of pain and Dr. Kibria's assessment of Plaintiff.  Tr. 16-18; *see* Tr. 72 (referencing post-operative imaging of knee showing "[s]ome depression of the plateau" and that the knee had not yet healed), 96-100, 382-83. Further, although "a claimant's inability to afford a prescribed medical treatment excuses noncompliance," the record indicates Plaintiff was given options for obtaining free medical treatment, as noted by the ALJ.  Tr. 16-18, 389, 423; *see Dawkins v. Bowen*, 848 F.2d 1211, 1212 (11th Cir.1988).   Nevertheless, the ALJ's RFC determination did not rely on Plaintiff's failure to seek medical treatment, and it did not rely solely on Dr. Morford's opinion that Plaintiff's performance of light work would be "feasible with continued [treatment]."  Tr. 16-18, 98.

Further, Mr. Marrero's note that Plaintiff may need additional surgery is not inconsistent with what Plaintiff characterizes as "the optimistic projection of Dr. Morford" that Plaintiff could perform light work.  Doc. 17 at 8; *see* Tr. 388.  Plaintiff fails to explain how Mr. Marrero's observation contradicts the limitations Dr. Morford assigned Plaintiff.  *See* Doc. 17 at 8.  The possibility that Plaintiff might need knee surgery at some unknown future date does not in and of itself limit or preclude

Plaintiff's ability to work.  *See.  Wind v. Barnhart, 133 F. App'x 684, 690 (11th Cir. 2005)* (quoting *McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)*) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."). Moreover, nurse practitioners are excluded from the list of acceptable medical sources as defined in the operative regulations, and thus their opinions are not entitled to substantial weight. 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *Stultz v. Comm'r of Soc. Sec., 628 F. App'x 665, 668 (11th Cir. 2015)*. Therefore, even if a contradiction existed, Mr. Marrero's speculative opinion is insufficient to negate the opinions of the state agency medical consultant. *See Stultz, 628 F. App'x at 668*.

### ii.  Drs. Miller and Leach

Plaintiff argues the ALJ failed to properly analyze the opinions of Drs. Miller and Leach, both of whom reported on DMV forms that Plaintiff cannot walk 200 feet without stopping to rest. Doc. 17 at 10; Tr. 374, 422. Plaintiff asserts the ALJ's failure to specify the weight assigned to the medical opinions of Drs. Miller and Leach constitutes harmful error. Doc. 17 at 10. The Commissioner responds that the DMV form signed by Dr. Miller and cited by Plaintiff is not a medical opinion as defined by the regulations because it does not assess "what [the claimant] can still do despite impairment(s), and [his] physical or mental restrictions." *Id.* at 10 (quoting 20 C.F.R. §§ 404.1527, 416.927). Therefore, the Commissioner argues "any oversight by the

ALJ in not weighing each and every statement by the doctors that might be considered an opinion was at most harmless error." *Id*.

The Court recommends the ALJ erred in failing to articulate the weight given to the opinions of Drs. Miller and Leach in the DMV forms. Drs. Miller and Leach signed the DMV forms on April 11, 2014 and November 6, 2015, respectively, checking boxes to indicate Plaintiff was permanently disabled with an inability to walk 200 feet without stopping to rest. Tr. 374, 422. In her decision, the ALJ did not discuss the weight given to the opinions of Drs. Miller or Leach; she merely acknowledged, "[Plaintiff's] handicapped parking sticker was assigned in 2014, and after it expired, she applied for it again." Tr. 17. Although the Commissioner contends the representations in the DMV forms do not constitute medical opinions, they do indicate the express judgments of Drs. Miller and Leach regarding Plaintiff's physical restrictions and the severity of her impairments—namely, that Plaintiff cannot walk 200 feet without stopping to rest. *See* Tr. 374, 422; Doc. 17 at 10; *see also* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1310 (11th Cir. 2018) (characterizing a physician's completion of a physical capacities form in which the doctor indicated that plaintiff "could sit for less than 30 minutes, stand for less than 15 minutes, and walk for less than 15 minutes at one time," etc., as a medical opinion); *Gjertsen v. Comm'r of Soc. Sec.*, No. 2:17-cv-48-FtM-CM, 2018 WL 1313118, at *4 (M.D. Fla. Mar. 14, 2018) (characterizing DMV form completed by treating physician as a medical opinion). Therefore, as "the ALJ must state with particularity the weight given to different medical opinions and the

reasons therefor," the Court recommends the ALJ erred by failing to articulate the weight given to the opinions of Drs. Miller and Leach and the reasons why.  *See Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Vuxta*, 194 F. App'x at 877; *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (treating seemingly identical disability parking permit application completed by plaintiff's treating physician as a medical opinion and finding the ALJ erred in failing to address it).

Although "the [ALJ] must state with particularity the weight given to different medical opinions and the reasons therefor," the ALJ's failure to do so is harmless if it did not affect the ALJ's ultimate determination.  *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 557-58 (11th Cir. 2015) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)); *but see Winschel*, 631 F.3d at 1179.  The Eleventh Circuit has held that the court "has no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the plaintiff's] medical condition as a whole."  *Dyer*, 395 F.3d at 1211 (internal quotation marks omitted).  The question before the Court is whether substantial evidence in the record supports the ALJ's opinion as a whole.  *Id.*  As a result, even if the ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination.  *Hunter*, 609 F. App'x at 558.

The Court recommends the ALJ's failure to consider the opinions of Drs. Miller and Leach in the DMV forms was harmless error.  First, the ALJ was not required to

give deference to the opinions of Drs. Miller and Leach that Plaintiff is "a disabled person with a permanent disability(ties) that limits or impairs his/her ability to walk 200 feet without stopping to rest," as the determination of a claimant's disability status is reserved to the Commissioner. *See* Tr. 374, 422; 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

Second, this Court and courts in several other circuits specifically have discounted the probative value of disabled parking permits and DMV forms in Social Security cases because of the varying disability standards of different agencies. *See, e.g.*, *Gjertsen*, 2018 WL 1313118, at *4; *see also* 20 C.F.R. §§ 404.1504, 416.904 ("[A] determination made by another agency that you are disabled or blind is not binding on us."). In *Bass v. McMahon*, the Sixth Circuit held that the "ordering of a disability [parking permit] adds nothing to a finding of disability here because there is no evidence that the two have substantially similar requirements for finding a person to be disabled." 499 F.3d 506, 511 (6th Cir. 2007). Moreover, in *Halsell v. Astrue*, the plaintiff argued the ALJ should have given weight to her successful application for a disabled parking permit in assessing the plaintiff's credibility, but the Seventh Circuit explained that "the [disabled parking permit] proves nothing unless the disability standard is the same." 357 F. App'x 717, 722 (7th Cir. 2009). The court further emphasized that besides the DMV forms, there was no evidence in the record supporting that the plaintiff could not walk 200 feet. *Id.* at 723-24. Similarly, here, apart from Drs. Miller and Leach's opinions on the DMV forms that Plaintiff cannot walk 200 feet without stopping to rest, there is no evidence that Plaintiff could not

walk more than 200 feet; on the contrary, the record indicates Plaintiff could walk one mile with her cane.  Tr. 109, 382-83.

Lastly, the records Plaintiff cites do not sufficiently demonstrate that the ALJ's failure to assign weight to the opinions in the DMV forms constituted harmful error. *See* Doc. 17 at 7; Tr. 372 (Dr. Miller treatment note from May 30, 2014 documenting Plaintiff's subjective complaints of pain, foot swelling and concern that leg was turning outward); Tr. 375 (mostly illegible Dr. Miller treatment note from April 11, 2014 documenting Plaintiff's subjective complaints of pain and swelling in her knee; appears to reference some "severe" damage to knee visible in x-ray); Tr. 377 (mostly illegible Dr. Miller treatment note from March 14, 2014 referencing minimal swelling in knee, "severe" post-operative atrophy and a "slight vague deformity"); Tr. 388 (patient encounter note by Mr. Marrero indicating Plaintiff "may need to have another surgical repair" of knee)).  Most of the cited records were from the months immediately following Plaintiff's knee injury.  *See* Tr. 372, 375, 377.  By the time Dr. Kibria examined Plaintiff in August 2014, Plaintiff had no evidence of weakness or atrophy, and she had 5/5 strength in all extremities.  *See* Tr. 18; Tr. 382-83. Therefore, as the ALJ noted in evaluating the discharge instructions from January 9, 2018, the assessments in the few months following Plaintiff's surgery appear to evaluate Plaintiff's post-operative condition, not a condition that is expected to last at least 12 months.  Tr. 18, 348-51, 372, 375, 377; 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).

Further, the ALJ did not wholly ignore the DMV forms—she acknowledged them in her opinion, indicating she considered them. *But c.f. Dempsey*, 454 F. App'x at *3 (finding reversible error where the ALJ failed to address DMV forms completed by plaintiff's treating physician, among other medical opinions, because the ALJ "never mentioned the application"). Accordingly, although the Court recommends the ALJ erred by failing to discuss the weight given to the opinions of Drs. Miller and Leach in the DMV forms, such error was harmless. Given that the Court recommends remanding the case for further proceedings, however, the ALJ should correct the error by considering the opinions of Drs. Miller and Leach in the DMV forms and identifying their weight in re-assessing Plaintiff's RFC.

      *b. RFC determination*

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based on all the relevant medical and other evidence in the record of a claimant's ability to do work despite her limitations. Tr. 15-16; 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). For these purposes, relevant evidence in the record includes any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. §§ 404.1545(a), 416.945(a). The claimant's age, education and work experience, and whether she can return to her past relevant work also are considered in determining her RFC. *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R.

§ 404.1545(a)).   The ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Gibson v. Heckler*, 779 F.2d 619, 622-23 (11th Cir. 1986).   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

Here, the ALJ found Plaintiff has the RFC to perform light work with certain limitations:

> [T]he claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds.   The claimant can occasionally balance, stoop, kneel, crouch or crawl.   She must avoid concentrated exposure to extreme cold, vibration and hazards such as heights and moving machinery.

Tr. 16.  The ALJ stated that Plaintiff's "use of a cane and reports of her knee giving out support her environmental restrictions."  Tr. 18.

Plaintiff argues there is "broad agreement" among Plaintiff's medical sources that she requires a hand-held assistive device to ambulate.  Doc. 17 at 13.   Plaintiff also asserts environmental restrictions do not account for her use of a cane—"[t]he use of a cane primarily imposes manipulative limitations [on] an individual's ability to use her upper extremities, rather than environmental limitations."  *Id.*  Plaintiff further contends it was clear from the VE's testimony that the need to a use a cane would preclude Plaintiff from being able to perform her past relevant work.  *Id.* at 14

- 16 -

(citing Tr. 65).   The Commissioner argues the ALJ reviewed all of the medical evidence in finding that Plaintiff can perform light work.[7]   *Id.* at 15.   The Commissioner asserts the ALJ properly accounted for Plaintiff's use of a cane by identifying environmental limitations in Plaintiff's RFC.   *Id.*   The Commissioner further contends Plaintiff has failed to show any limitations aside from those identified by the ALJ, and substantial evidence supports the ALJ's RFC assessment. *Id.* at 15-16.   The Court recommends the ALJ failed to properly assess Plaintiff's RFC to account for her use of a cane.

Although technically a policy interpretation about sedentary work, courts generally refer to SSR 96-9p for its guidance on determining if a hand-held assistive device is medically required:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. . . .

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (emphasis in original); *see, e.g.*, *Gersic v. Comm'r of Soc. Sec.*, No. 2:16-cv-631-FtM-CM, 2017 WL 3705839, at *6 (M.D. Fla. Aug. 28, 2017); *McGriff v. Berryhill*, No. 3:16-cv-1074-J-34JRK, 2017 WL 3701896, at *2, *5 (M.D. Fla. Aug. 1, 2017); *Brownell v. Comm'r of Soc. Sec.*, No. 2:13-cv-173-FtM-DNF, 2014 WL 4809470, at *2, *7 (M.D. Fla. Sept. 26, 2014).   Here, there

---

[7]   The Commissioner states the ALJ found Plaintiff can "perform a range of sedentary work."  Doc. 17 at 15.   The Court assumes this is a typographical error.  *See* Tr. 16.

are multiple medical records indicating the circumstances in which Plaintiff requires

a cane, and the Commissioner does not argue that Plaintiff's use of a cane is not

medically required.  *See* Tr. 98, 374, 383; Doc. 17 at 15-16.  In particular, Plaintiff

cites Dr. Kibria's opinion that Plaintiff's cane is necessary for walking more than one

hundred yards and Dr. Morford's opinion that Plaintiff's cane is medically necessary.

Doc. 17 at 13; *see* Tr. 98 ("Staff (Cane) probably medically necessary for over 100

yards"), 383 (same); *see also* Tr. 374, 422.  Further, contrary to the Commissioner's

suggestion, the ALJ states the Plaintiff's use of a cane supports the identified

environmental restrictions, *not* that the limitations and restrictions accommodate

Plaintiff's use of a cane.  *See* Tr. 18; *see also* Doc. 17 at 15.  Therefore, the Court

recommends the ALJ erred in failing to adequately account for the effect of Plaintiff's

use of a cane on her RFC.

Further, the hypotheticals posed by the ALJ to the VE at the hearing did not

reference Plaintiff's use of a cane, but Plaintiff's attorney cross-examined the VE

about it:

> Q:   Okay.  Last couple of questions please.  If the individual requires a hand[-]held assistive device like a cane at all times when either standing or walking on the job, how is that going to impact the ability to perform the jobs that you listed?
>
> A:   Well, I would say that any job that requires a person to handle while walking would be eliminated because I would expect the dominant upper extremity to be occupied with the cane.
>
> Q:   Would that preclude the performance of light work?
>
> A:   It would depend on if they needed to use their hands while walking.  There's a lot of light work that involves standing but it doesn't necessarily involve bilateral handling.

Tr. 58-59.  Because the VE's testimony did not specify what the effects of using a cane would be on Plaintiff's past relevant work as an inspector and as a sander/grinder specifically, the Court is unable to determine whether substantial evidence supports the ALJ's determination that Plaintiff's RFC does not preclude performance of her past relevant work.  *See* Tr. 19, 58-59.  The ALJ's decision neither discredits Plaintiff's need for a cane nor suggests the use of a cane is not medically necessarily. *See* Tr. 12-20.  The ALJ nevertheless did not discuss how Plaintiff's use of a cane impacts her RFC limitation, other than to say the use of a cane supports imposing environmental limitations, which are unrelated to Plaintiff's ability to physically perform past relevant work while using a cane.  *See id.*  Therefore, the Court recommends the decision of the Commissioner be remanded for the ALJ to consider whether Plaintiff's use of a cane affects her RFC and thus her ability to perform her past relevant work and, if necessary, other jobs in the national economy.  *See Brownell*, 2014 WL 4809470, at *7 (reversing and remanding where ALJ failed to consider plaintiff's need for a cane when making RFC determination).

### c.  Plaintiff's credibility

The Eleventh Circuit long has recognized that "credibility determinations are the province of the ALJ."  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a

claimant's alleged symptoms and their effect on the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Wilson v. Barnhart*, 284 F.3d 1219, 1225–266 (11th Cir. 2002); *Foote*, 67 F.3d at 1561.  The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.  *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (internal citations omitted).  "The question is not . . . whether [the] ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.

Plaintiff argues the ALJ's evaluation of her credibility is not supported by substantial evidence.  Doc. 17 at 16-17.  Plaintiff contends her ability to bathe, wash dishes, drive and shop for groceries do not, in and of themselves, preclude a finding of disabling impairment.  *Id.* at 16.  Plaintiff also asserts that her treating physicians, Drs. Miller and Leach, reported Plaintiff is unable to walk more than 200 feet without stopping to rest.  *Id.* at 17.  Thus, Plaintiff argues her testimony regarding her inability to perform light work is supported by the medical opinions of her treating

physicians. *Id.* The Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff's allegations regarding her limitations are not entirely credible. *Id.* at 17-20. The Commissioner asserts the ALJ properly found Plaintiff's testimony was self-contradictory because Plaintiff alleged at times that her pain is constant, and medication is ineffective; but then she testified that her pain is not constant. *Id.* at 18; Tr. 16. The Commissioner cites the ALJ's finding that Plaintiff refused to obtain medical treatment and failed to take prescribed pain medication. Doc. 17 at 17-19; Tr. 17. The Commissioner also argues Plaintiff's complaints are inconsistent with objective medical evidence that shows Plaintiff has normal muscle tone and can perform light work. Doc. 17 at 19. The Court recommends substantial evidence supports the ALJ's credibility findings.

After analyzing the medical evidence, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Tr. 18. The ALJ discussed Plaintiff's inconsistent testimony about her pain levels, the inconsistent information regarding whether Plaintiff takes prescribed and/or over-the-counter medicine to treat pain symptoms, and the objective medical evidence, which are appropriate considerations. Tr. 16-18 (citing Tr. 382-83); 20 C.F.R. §§ 404.1529(c)(1), (4), 416.929(c)(1), (4). The ALJ also partially credited Plaintiff's testimony regarding the pain and numbness in her left knee as a reason for restricting Plaintiff to light work. Tr. 18.

To the extent treatment notes exist that may contradict some portions of the evidence relied upon by the ALJ, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389–403). The record reveals no reversible error in the ALJ's assessment of Plaintiff's credibility concerning the intensity and persistence of Plaintiff's symptoms and their limiting effects on Plaintiff's ability to work because the ALJ was not "clearly wrong to discredit" Plaintiff's testimony. *Werner*, 421 F. App'x at 939. The ALJ sufficiently compared Plaintiff's statements with the objective medical evidence and found her statements to be only partially credible, as reflected in the RFC. Therefore, the Court recommends declining to disturb the ALJ's credibility findings. *Foote*, 67 F.3d at 1562.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

      A.      Articulate the weight given to the opinions of Drs. Miller and Leach in their disability parking permit applications;

      B.      Specifically address how Plaintiff's need for the use of an assistive device to ambulate affects her RFC and thus her ability to perform her past relevant work, and if necessary, other jobs in the national economy, which may require additional testimony from a vocational expert;

        C.      Make any other determinations consistent with this Report and Recommendation, or in the interests of justice.

      2.      The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of Plaintiff Sharon Faye Holmes, and close the file.

      **DONE** and **ENTERED** in Fort Myers, Florida on this 27th day of July, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record